UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MAURO ZUNIGA and ) | |
| NATHANIEL I. HURD, ) | |
|     Plaintiffs, ) | |
| ) | |
|     v. ) | 3:08 CV 284 |
| ) | |
| KEYSTONE RV COMPANY, ) | |
|     Defendant. ) | |

### OPINION and ORDER

This matter is before the court on defendant Keystone RV Company's ("Keystone") "Motion to Dismiss Count II of Plaintiffs' Complaint to the Extent Plaintiffs Allege Unlawful Discrimination and Constructive Discharge" in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6) Despite the motion's caption, which would appear to suggest that some portion of Count II should survive, Keystone actually argues in its memorandum in support that the claim alleged in Count II of the complaint "should be dismissed in its entirety." Memorandum in Support (DE # 9) at 2.

Under the liberality afforded by the federal notice-pleading standard, a plaintiff "must provide only 'enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (*quoting Lang v. TCF Nat'l*

*Bank,* 249 Fed. Appx. 466 (7th Cir. 2007) (*citing Bell Atlantic Corp. v. Twombly,* – U.S. –, –, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks and ellipses omitted))). Applying this standard, the Court of Appeals in *Tamayo* found that the plaintiff had pleaded sufficient facts to state a claim for retaliation where she alleged only that she had been performing her job satisfactorily, that she had filed two EEOC charges alleging sex discrimination and been issued a right-to-sue letter, and thereafter had been subjected to adverse employment actions by the defendant in retaliation. *Tamayo*, 526 F.3d at 1085.

In the present case, Count II of the complaint pertains to plaintiff Hurd only. Hurd's salient allegations are that he had been employed by the defendant for 4 years, the last 3 of which were as a "team leader." Complaint, Count II ¶ 4. On approximately February 16, 2007, Hurd protested to plant manager John Miller that another employee (plaintiff Zuniga, who is allegedly of Hispanic origin) should not have been terminated for circumstances involving absence from work because a non-Hispanic employee had not been terminated under similar circumstances. Complaint Ex. D (Hurd's EEOC charge[1]). However, Hurd was told that "'Dan [the plant production manager] has made up his mind'" and that Hurd shouldn't "'bring in any more people that can't speak English.'" Complaint, Count II ¶ 4.

---

[1] Hurd has incorporated his EEOC charge and made it a part of his complaint. Complaint, Count II ¶ 3.

Later that day, "[d]espite the fact that Plaintiff had been performing his job properly without any complaints direct[ed] to him and, on February 8, 2007, Plaintiff was told that his crew was running fine without any problems" Hurd was demoted from team leader to a general laborer position, with a cut in pay from $1400 weekly to $700. Complaint, Count II ¶ 5 and Ex. D. He was also told, either that day (a Friday) or on the following Monday,[2] to go home and "'think about how [he] could be a better team leader." Complaint Ex. d. Other events followed, which a few days later culminated in what Hurd alleges was a constructive discharge. Complaint, Count II ¶¶ 5-7 and Ex. D. Hurd alleges that he was "discriminated against because Defendant by and through its agents retaliated against Plaintiff for protesting the discriminatory termination of Plaintiff Mauro Zuniga[.]" Complaint, Count II ¶ 9.

Comparing the present complaint to the one found adequate in *Tamayo*, it should be obvious to anyone that Hurd's allegations are sufficient. It is not obvious to Keystone, however, which argues through its attorneys that Count II of the complaint has two flaws which require its dismissal for failure to state a claim. The first flaw, as Keystone sees it, is that Hurd's allegation that he was discriminated against for protesting Zuniga's termination is "nothing more than a legal conclusion,

---

[2] There are inconsistencies between the complaint and Hurd's EEOC charge which make the timing of the sequence of events difficult to understand.

and there are no supporting facts alleged . . . that support this conclusion. Memorandum in Support of Motion to Dismiss (DE # 9) at 4-5. Obviously, Hurd's allegation that he was demoted and his pay cut in half the same day that he lodged his protest is a supporting fact. Keystone's criticism, however, is that:

> Hurd has failed to allege he is in a protected class, or that he was qualified for his job or meeting Keystone's legitimate expectations. Indeed, Plaintiff Hurd acknowledges that he was transferred out of his Team Leader position because he was "not getting the job done."

Memorandum at 5.

This objection to the sufficiency of Hurd's allegations is itself quite objectionable. First, membership in a protected class is simply not an element of a Title VII retaliation claim. Instead, the first element of the claim is that the plaintiff engaged in a statutorily-protected activity. *Williams v. Waste Management of Illinois*, 361 F.3d 1021, 1031 (7th Cir. 2004). Challenging conduct that is prohibited by Title VII can satisfy this element. *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997). Hurd alleges that he was retaliated against after he complained that Zuniga was being terminated for conduct the same as for which a non-Hispanic[3] (and non-Amish) employee had not been terminated. Far from being insufficient, this is probably more factual detail than is required, as this court reads *Tamayo*.

---

[3] In addition to Zuniga's ethnic origin, Hurd's EEOC charge also complains of discrimination on the basis of religion.

4

Second, Keystone's assertion that Hurd doesn't allege that he was qualified or meeting Keystone's legitimate expectations, and instead admits that he was demoted "for not getting the job done," is itself baseless. The first half of this argument simply ignores the allegation in the complaint that Hurd "had been performing his job properly without any complaints direct[ed] to him and, on February 8, 2007, Plaintiff was told that his crew was running fine without any problems." Complaint, Count II ¶ 5. The second half of the argument takes a statement from Hurd's EEOC charge and ascribes meaning to it that is obviously the opposite of what is said. In the charge, Hurd explains that after he complained about Zuniga's treatment he was demoted and told that the reason for the demotion was that he was "not getting the job done." Hurd neither states nor implies that he acknowledges that the explanation was true: in context, he clearly means that the reason given to him for his demotion was false.

For these reasons, the first flaw Keystone points out in Hurd's complaint just does not exist. The second flaw in Count II, according to Keystone, is that Hurd's allegations are not sufficient to state a constructive discharge claim because: 1) he doesn't allege that Keystone made his work environment intolerable, but instead "that a *coworker*, not Keystone, threw screws at him;" 2) he doesn't allege that his supervisor's inadequate response to that incident was motivated by a discriminatory animus; and 3) he doesn't allege a long-standing pattern of discriminatory conduct,

such as is necessary to establish that his working environment was "so intolerable . . . that resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004); *see Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 517 (7th Cir. 1996).

Taking the third prong of that argument first, it is true that an "intolerable" working environment typically requires more than a single unpleasant event. However, "[a] credible death threat that signals grave danger to the plaintiff's bodily integrity . . . can constitute grounds for finding constructive discharge[.]" *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000). What Hurd alleges is that, on his first day in his newly-demoted position, his compressed air line was cut twice, and co-workers threw screws at him. After he complained about these incidents to his supervisor, screws were thrown at him again, and this time a bigger one stuck in his head. When he complained to his supervisor again, he was told "if you can't handle the work here, you should move on." Complaint, Count II, ¶ 7.

Viewed in the light most favorable to Hurd, these allegations boil down to this: for half of what he had previously been making, he would be expected to put up with conduct that carried a risk of serious physical injury such as which might occur if a screw or other thrown object struck him in the eye, and not only was his supervisor not going to take corrective action, Hurd should quit if he didn't like it.

Although this isn't as serious as a death threat, it does involve a serious threat to Hurd's bodily integrity, and goes beyond that which is merely unpleasant. To find that Hurd's allegations, if proved, are not sufficient to establish a constructive discharge would be to hold that employees who have reported an assault by co-workers and are then told to "suck it up" must continue to work until they suffer a serious physical injury before they can state a claim for constructive discharge. This is not the law. See *Simpson v. Borg-Warner Automotive, Inc.*, 196 F.3d 873, 978 (7th Cir. 1999) ("a work environment posing grave threats to physical integrity may be intolerable"); *cf. Drake v. Minnesota Mining and Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (summary judgment granted to employer on constructive discharge claim where employee resigned over fear for personal safety but presented no evidence that her fear was reasonable, and had asked employer *not* to intervene). In this case, adding substance to Hurd's claim is the fact that the harassment came on the heels of a demotion and severe cut in pay, and was coupled with his supervisor's suggestion that he should quit. See *Williams*, 361 F.3d at 1032 (citing cases for proposition that constructive discharge can be demonstrated by "blatant cues that the employee is no longer wanted and will be fired if the employee doesn't resign first.")

Keystone's argument that Hurd only alleges that his co-workers, not Keystone, made his environment intolerable by throwing screws at him, ignores the

fact that when he reported the incident to his supervisor, not only did the supervisor not take corrective action, he suggested that Hurd should quit. Effectively, Hurd's supervisor condoned the harassment, subjecting Keystone to vicarious liability both because condoning that conduct is part of the creation of the intolerable environment, and because of his negligence for not taking steps to remedy it. *See Loughman v. Malnati Organization, Inc.*, 395 F.3d 404, 407 (7th Cir. 2005).

Finally, there is Keystone's assertion that Hurd fails to state a constructive discharge claim because he doesn't allege that his supervisor's failure to take corrective action was motivated by a discriminatory animus. It is true that in order to establish a constructive discharge, a plaintiff must be able to prove that the reason his working conditions were intolerable was because of unlawful discrimination. *Simpson*, 196 F.3d at 877. But establishing that proof, and adequately pleading the claim, shouldn't be conflated as Keystone does:

> We previously have stated, on numerous occasions, that a plaintiff alleging employment discrimination under Title VII may allege these claims quite generally. A complaint need not allege all, or *any,* of the facts logically entailed by the claim, and it certainly need not include evidence. Indeed, litigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's *proof* leads to windy complaints and defeats the function of Federal Rule of Civil Procedure Rule 8.

*Tamayo*, 526 F.3d 1074 at 1081 (citations, quotation marks, brackets and footnote omitted.) Again, all a complaint need do is to provide enough factual detail to show that the claim is plausible. *Id*. at 1083.

Hurd's complaint meets this liberal standard. Accepting the allegations of his complaint and the reasonable inferences therefrom as true, almost immediately after he protested Zuniga's termination, he was demoted, sent home, on his first day back at work assaulted by co-workers, and when he requested aid from his new supervisor, invited to quit. Discriminatory animus can be proved by suspicious timing, *Geier v. Medtronic*, Inc., 99 F.3d 238, 241 (7th Cir. 1999), and it is plausible to infer that Hurd's new supervisor had been informed of the reasons why (whether they were legitimate or illegitimate) Hurd had been demoted and transferred to a new department. While Hurd might not ultimately be able to prove his allegations, he doesn't have to at the pleading stage of his case.

For the foregoing reasons, Keystone's " "Motion to Dismiss Count II of Plaintiffs' Complaint to the Extent Plaintiffs Allege Unlawful Discrimination and Constructive Discharge" (DE # 8) is **DENIED**. The clerk should also terminate DE # 11, which appears to be a duplicate filing of DE #8.

**SO ORDERED.**

Date: November 5, 2008

  s/James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT